IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

FABRIZIO GONZALEZ,           §
                             §
          Plaintiff,         §
                             §
v.                           §          CIVIL ACTION NO. H-09-574
                             §
JACOBS FIELD SERVICES, INC., §
                             §
          Defendant.         §

## MEMORANDUM AND ORDER

Pending is Defendant Jacobs Field Services, Inc.'s Motion for Summary Judgment (Document No. 21).  After carefully considering the motion, response, reply, and the applicable law, the Court concludes as follows.

## I.  Background

Plaintiff Fabrizio Gonzalez complains about the treatment he received from his employer, Jacobs Field Services ("Defendant"), a commercial construction company.  Defendant routinely hires crew members to work on particular projects of limited duration and, when a project nears completion, reduces the crew through a "reduction in force" or "R.I.F."  Plaintiff began working for Defendant's predecessor company--J.E. Merit--in February of 1996, and was laid off after nine months as part of a reduction in force. Over the next 11 years, Plaintiff worked for Defendant intermittently:

| Hire Date | Termination Date | Termination Reason |
|-----------|------------------|--------------------|
| 2/1/96 | 11/6/96 | RIF |
| 7/14/97 | 7/23/97 | Quit |
| 8/25/97 | 12/15/97 | Quit |
| 11/23/98 | 5/14/99 | RIF |
| 7/8/99 | 8/10/99 | RIF |
| 8/23/99 | 12/22/99 | Quit |
| 1/21/00 | 3/2/00 | RIF |
| 10/17/02 | 11/14/02 | RIF |
| 8/10/05 | 8/23/05 | RIF |
| 8/3/07 | 2/7/08 | RIF[1] |

Plaintiff's most recent employment term with Defendant is the subject of this suit.  On August 3, 2007, Defendant hired Plaintiff as a "Helper" for a short-term maintenance project known as the "Turnaround," located at an ExxonMobil facility in Baytown, Texas. During the project, Plaintiff's foreman was Alvaro Garcia, who in turn reported to General Foreman Mario Aleman.  Plaintiff, Garcia, and Aleman are Hispanic, as is everyone else who worked on Plaintiff's crew except for one person.  In February 2008, the Turnaround project was nearing completion and Plaintiff was laid off as part of a reduction in force.  Plaintiff now claims that he was discriminated against and harassed on the basis of national

---

[1] Document No. 21, ex. 3 ¶ 6 ("Cis Decl.").

2

origin, in violation of Texas and federal law, because he is a Hispanic with an American origin.  According to Plaintiff, most of the members of his crew were from Mexico.  Plaintiff also claims that after he was laid off, Defendant retaliated against him "[a]fter plaintiff asserted that rights protected by federal and state antidiscrimination statutes had been violated" by refusing to (1) rehire him immediately after he was laid off and (2) rehire him six months later when he applied for another position.  Defendant moves for summary judgment on all claims.

## II.   Plaintiff's Request for a Rule 56(f) Extension

In Plaintiff's Response to Motion for Summary Judgment, he asserts that "Defendant's motion for summary judgment should be abated or overruled because it is premature."[2]  Plaintiff argues that the parties have just performed the discovery necessary to prepare for mediation, not for trial or dispositive motions.  Thus, Plaintiff has not had an "opportunity to conduct reasonable discovery."[3]

"Rule 56(f) discovery motions are 'broadly favored and should be liberally granted' because the rule is designed to 'safeguard non-moving parties from summary judgment motions that they cannot adequately oppose.'"  Raby v. Livingston, 600 F.3d 552, 561 (5th

---

[2] Document No. 22 at 1.

[3] Document No. 22 at 2.

Cir. 2010) (quoting <u>Culwell v. City of Fort Worth</u>, 468 F.3d 868, 871 (5th Cir. 2006)); *see* FED. R. CIV. P. 56(f).  The party invoking the rule, however, "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." <u>SEC v. Spence & Green Chem. Co.</u>, 612 F.2d 896, 901 (5th Cir. 1980). A party must indicate *why* the amount of discovery has been insufficient, "set forth a plausible basis for believing that specific facts" exist, and indicate *how* the facts, if adduced, will create a genuine issue of material fact.  *See* <u>Raby</u>, 600 F.3d at 561; <u>Krim v. BancTexas Group, Inc.</u>, 989 F.2d 1435, 1442 (5th Cir. 1993).

Plaintiff's scant reason for an extension, the substance of which is repeated in its entirety above, is merely a "vague assertion[] that additional discovery will produce needed, but unspecified, facts," and is insufficient to invoke the lenient standard of Rule 56(f).  *See* <u>Stearns Airport Equip. Co., Inc. v. FMC Corp.</u>, 170 F.3d 518, 534-36 (5th Cir. 1999) (affirming district court's refusal to grant a Rule 56(f) extension where the plaintiff specified who it wanted to depose but did not specify what relevant facts those depositions were likely to reveal); *see also* <u>Krim</u>, 989 F.2d at 1441-43 (finding the plaintiff's Rule 56(f) motion lacked specificity because the plaintiff's motion merely consisted of the assertion that "though exercising due diligence, Plaintiff has been unable to obtain substantive discovery from the Defendant on the

merits of this action," and included a pending document request that was served on the defendant).  Nonetheless, Plaintiff has had another three months to pursue additional discovery after conclusion of the parties' unsuccessful mediation.  Plaintiff has filed no supplemental brief or additional evidence as of this date, although he has had ample additional time to have done so.

Accordingly, Plaintiff's request to "abate or overrule" Defendant's Motion for Summary Judgment is denied.

### III.   Defendant's Motion for Summary Judgment

A.   Summary Judgment Standard

Rule 56(c) provides that summary judgment "should be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   FED. R. CIV. P. 56(c).   The movant must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).   A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists

will not suffice.  Id.  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden."  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986).  All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."  Id.  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."  Anderson, 106 S. Ct. at 2513.

To withstand a no-evidence motion for summary judgment, the nonmovant must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 106 S. Ct. at 2552.  If the nonmovant fails to make such a showing, "there can be no 'genuine issue as to any material fact,' since a

complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," and summary judgment must be granted.  Id.

B.  Discrimination

Plaintiff brings disparate-treatment claims under both Title VII and the Texas Commission on Human Rights Act ("TCHRA"); both statutes require the same analysis.  Ysleta Indep. Sch. Dist. v. Monarrez, 177 S.W.3d 915, 917 (Tex. 2005) (stating that the TCHRA is intended to correlate with federal law in employment cases, so Texas court's look to federal law when applying it (citing Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 739 (Tex. 2003)). Because Plaintiff lacks direct evidence of discrimination, his claims are analyzed under the burden-shifting framework from McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973).  Under this framework, Plaintiff must first create a presumption of unlawful discrimination by presenting evidence of a *prima facie* case.  To establish a prima facie case on such a theory, Plaintiff must show that: (1) he was a member of a protected group; (2) he was qualified for his position; (3) he was subjected to an adverse employment action; and (4) he was treated less favorably than similarly situated non-American-born employees.  McCoy v. City of Shreveport, 492 F.3d 551, 559-60 (5th Cir. 2007); Ptomey v. Texas Tech Univ., 277 S.W.3d 487, 492-93 (Tex. App.--Amarillo 2009, no

pet. hist.); Winters v. Chubb & Son, Inc., 132 S.W.3d 568, 575 (Tex. App.-Houston [14th Dist.] 2004, no pet.).  Adverse employment actions are limited to "ultimate employment decisions," such as hiring, granting leave, discharging, promoting, and compensating, and do not include those decisions by employers that arguably might have some tangential effect upon those ultimate decisions.  Burger v. Cent. Apart. Mgmt., Inc., 168 F.3d 875, 878 (5th Cir. 1999). After making this *prima facie* showing, the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action.  Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259 (5th Cir. 2009).  If the employer can articulate such a reason, the inference of discrimination falls away, and the burden shifts back to the plaintiff to establish that his employer's proffered reason is merely a pretext for discrimination.  Id.  Plaintiff asserts he was subjected to the following adverse employment actions on account of his American origin: (1) he was forced to perform undesirable work assignments; (2) his promotion to Carpenter was delayed; (3) he was excluded from a job advancement; (4) he was investigated for beach of company policy; and (5) he was terminated.

1.   <u>Undesirable Work Assignments</u>

Plaintiff complains that he was pushed into performing undesirable work on account of his American origin.[4] Specifically, Plaintiff alleges that his foreman, Alvaro Garcia, "play[ed] favorites" by telling Plaintiff to perform a dirty job that was originally assigned to crew member Jesus Magana.   The men were building a set of pillars; Magana was working on one pillar and Plaintiff on the other.   Because a pipe was leaking over Magana's pillar, he was getting dirty.   Magana told Plaintiff that they were going to switch pillars, and when Plaintiff protested, Magana appealed to Foreman Alvaro Garcia who told the men to switch pillars.[5]

Plaintiff's claim fails because this unfavorable work assignment does not constitute an ultimate employment decision. *See* <u>Ellis v. Principi</u>, 246 F. App'x 867, 870 (5th Cir. 2007) (holding that being given less favorable work assignments and being denied a performance award were not ultimate employment decisions); <u>Matthews v. City of Houston Fire Dep't</u>, 609 F. Supp. 2d 631, 645 (S.D. Tex. 2009) (Rosenthal, J.) (finding that the plaintiff who was forced to work in the warehouse, assigned demeaning duties, and

---

[4] Document No. 21, ex. 1 at 98-99 ("Gonzalez Depo.").

[5] Gonzalez Depo. at 108-10.

excluded from major meetings did not suffer an ultimate employment decision).

## 2. Delayed Promotion

Plaintiff also asserts that his promotion to Carpenter was delayed for three months because of his American origin.  During the Turnaround project, Plaintiff decided to seek a promotion to Carpenter from his current position--Helper.  To do so, Plaintiff had to pass a written test administered by the National Center for Construction Education and Research ("NCCR"), and then pass a hands-on test administered by a NCCR-certified proctor.[6]  Plaintiff told his General Foreman--Mario Aleman--that he wanted to become a Carpenter, and that he previously failed the written exam by one point.[7]  Aleman arranged for Plaintiff to take the test again:

> I told [Plaintiff] that I would try to have the Company sponsor him on a second attempt and pay the required testing fee.  I received approval for the sponsorship, and [Plaintiff] took the test a second time.[8]

Plaintiff then passed the written exam and the hands-on test, and Aleman immediately submitted the paperwork reflecting such so that Plaintiff could be reclassified as a Carpenter and receive a pay

---

[6] Document No. 21, ex. 4 ¶4 ("Aleman Decl."); Gonzalez Depo. at 66, 83-90.

[7] Aleman Decl. ¶5; Gonzalez Depo. at 85.

[8] Aleman Decl. ¶5; *see also* Gonzalez Depo. at 85.

raise.[9]  Three months later, Plaintiff received his promotion and raise.

Assuming that the three-month delay in activating Plaintiff's promotion to Carpenter is an adverse employment action, the evidence, taken in the light most favorable to Plaintiff, fails to create a genuine issue of material fact that the delay was discriminatory.[10]  Plaintiff's only evidence is his own conclusory testimony in which he speculates that the delay was wrongful. Plaintiff stated that he does not know if such a delay is typical.[11] He does not point to any similarly situated crew members who were *not* born in the United States and were promoted any sooner after they passed the carpentry qualifying exams.  He does not even assert *who* discriminated against him: he admits that his promotion "was completely out of [Aleman's] hands," and that he has "no idea" about who administered the process for activating his promotion.[12] Plaintiff's mere suspicions that he was the victim of unlawful discrimination because he is a Hispanic of American birth rather

---

[9] Aleman Decl. ¶6.

[10] Neither party cites authority on whether a mere *delay* in effecting a promotion is an adverse employment action.  In Benningfield v. City of Houston, 157 F.3d 369, 378 (5th Cir. 1998), where the plaintiff's promotion was delayed for two years, the court declined to "address whether a mere delay in promotion constitutes an adverse employment action because [the plaintiff] received the promotion with retroactive pay and seniority."

[11] Gonzalez Depo. at 90.

[12] Id. at 93-94.

than of Mexican birth are not sufficient to create an issue of fact.  *See* <u>Armendariz v. Pinkerton Tobacco Co.</u>, 58 F.3d 144, 153 (5th Cir. 1995).

### 3.   <u>Exclusion from a Job Advancement</u>

Plaintiff also testified that he felt he was excluded from a possible safety-related position he heard about "through the grapevine" on three or four occasions while working on the Turnaround project.[13]  Plaintiff never submitted an application for a safety position.[14]  In fact, Plaintiff does not know the job requirements for such safety position (assuming it existed), who made the hiring decision for the position, how that hiring decision was made, or who was selected for the position (if anyone).[15]  To establish a *prima facie* case based on Defendant's failure to promote Plaintiff, Plaintiff must show, among other things, that (1) he sought and was qualified for an available position; and either (2a) Defendant awarded the position to someone outside Plaintiff's protected class, or (2b) Defendant continued to seek applicants with Plaintiff's qualifications after it rejected Plaintiff.  *See* <u>Medina v. Ramsey Steel Co., Inc.</u>, 238 F.3d 674, 680-81 (5th Cir. 2001).  Assuming that an open safety-related

---

[13] Gonzalez Depo. at 131.

[14] <u>Id.</u> at 135.

[15] <u>Id.</u> at 135.

12

position existed and that Plaintiff appropriately sought the position, Plaintiff has not established a *prima facie* case of discrimination because he has presented no evidence that (1) he was qualified for the position; (2a) he was either treated less favorably than similarly-situated employees who were not born in the United States; or (2b) Defendant rejected Plaintiff and continued to seek applicants with his qualifications.  Thus, this claim also lacks merit.

### 4.   Investigation for Breach of Company Policy

Plaintiff asserts in his First Amended Petition that he was "unjustifiably and baselessly charged with or investigated for a breach of company policy."[16]  At his deposition, Plaintiff clarified that this claim was based on being accused of sleeping or being inattentive during safety meetings.[17]  The reprimands were verbal; no official reprimand was ever filed.[18]  Being verbally reprimanded is not an adverse employment action, *see, e.g.,* King v. La., 294 F. App'x 77, 85 (5th Cir. 2008) (per curiam), and therefore this claim lacks merit.

---

[16] Document No. 1, ex. B ¶6.

[17] Gonzalez Depo. at 123-26.

[18] Id. at 123.

13

5.   <u>Plaintiff's Termination</u>

Plaintiff also asserts that he was terminated from the Turnaround project because of his American origin.  Even assuming Plaintiff can establish a *prima facie* case of discrimination based on this termination, his claim lacks merit because he has not rebutted Defendant's legitimate, non-discriminatory reason for terminating him.  According to Defendant, Plaintiff was laid off as part of a routine reduction in force.[19]  By February 2008, the Turnaround project was nearing completion; Defendant had gradually reduced its crew at the ExxonMobil site by forty percent over the previous year.[20]  On February 7, 2008, Superintendent Ray Cis instructed General Foreman Aleman to reduce his crew by three members.[21]  That day, Aleman met with Foreman Alvaro Garcia and they decided that they "no longer needed three of the crew's carpenters, and would therefore lay one carpenter off."[22]  According to Aleman,

> Carpenters Jesus Ham and Jose Garcia were more experienced and demonstrated a higher skill level than [Plaintiff], who had only recently become a carpenter. We also decided to terminate two of the crew's three

---

[19] Aleman Decl. ¶7; Document No. 21, ex. 5 ¶5 ("Garcia Decl.").

[20] Cis. Decl. ¶7;  Document No. 21, ex. 2 ¶8 ("Smith Decl.").

[21] Cis Decl. ¶7; Aleman Decl. ¶7; Garcia Decl. ¶4.

[22] Aleman Decl. ¶7; Garcia Decl. ¶5.

helpers, as we did not need three helpers to complete the project.[23]

Alvaro Garcia stated as follows,

Mr. Aleman and I discussed what was needed to complete the job. At the time, our crew was staffed with three carpenters. Mr. Aleman and I assessed each carpenter's experience, seniority, and skills. Unlike [Plaintiff], Jesus Ham and Jose Garcia--the crew's other two carpenters--had been carpenters for years, and had developed extensive carpentry skills. Mr. Gonzalez, by contrast, was a newly certified carpenter who did not have the same level of skills. Because we did not need three carpenters to complete the project, we selected [Plaintiff] for layoff.[24]

Before terminating Plaintiff, Aleman and Alvaro Garcia asked other crew leaders if they needed an additional carpenter.[25] Many of the other crews were also downsizing, and none of them needed carpenters at Plaintiff's skill level.[26] Plaintiff was then laid off.[27]

Selecting Plaintiff as part of a routine reduction in force because he was the most inexperienced of the crew's three carpenters is a legitimate and non-discriminatory reason for termination. *See, e.g.*, E.E.O.C. v. Tex. Instruments, Inc., 100

---

[23] Aleman Decl. ¶7.

[24] Garcia Decl. ¶5.

[25] Aleman Decl. ¶8; Garcia Decl. ¶7.

[26] Aleman Decl. ¶8; Garcia Decl. ¶7.

[27] Garcia Decl. ¶7.

F.3d 1173, 1181 (5th Cir. 1996) (basing a layoff decision on performance is a legitimate reason for termination); Gifford v. Lone Star Steel Co., 170 F.3d 183, 1999 WL 46976, at *1 (5th Cir. Jan. 15, 1999) (unpublished op.) (same).  Plaintiff has wholly failed to proffer evidence showing that Aleman and Alvaro Garcia's reason is false or unworthy of credence.  Nor has Plaintiff proffered evidence that he was "clearly better qualified" than the other two carpenters assigned to the project when Plaintiff was laid off.  See E.E.O.C. v. Manville Sales Corp., 27 F.3d 1089, 1096 n.5 (5th Cir. 1994) (explaining that one way the plaintiff could show that a reduction-in-force was a pretext for unlawful discrimination was by showing he is clearly better qualified than those who were not terminated).  "To raise a fact question about whether [he] is clearly better qualified, [Plaintiff] must show that 'disparities in curricula vitae are so apparent as virtually to jump off the page and slap us in the face.'"  Sanders v. Anadarko Petrol. Corp., 108 F. App'x 139, 143 (5th Cir. 2004) (quoting Odom v. Frank, 3 F.3d 839, 847 (5th Cir. 1993)).  Plaintiff admits that he lacked seniority over Ham and Jose Garcia, and that he was not more qualified than Ham.[28]  Plaintiff also testified that while he felt he was better qualified than Jose Garcia in respect to woodworking, carpenters are also expected to do concrete and rebar work:

---

[28] Gonzalez Depo. at 172, 175.

> A carpenter didn't only do woodwork.  We also did
> concrete work, and we also did rebar.  Jose Garcia was
> known to be rebar man.  So, I can't say that I was more
> qualified than himself because my respects and hats off.
> This guy knew what he was doing when it came to rebar.[29]

The evidence, when viewed in a light most favorable to Plaintiff, fails to raise a fact issue that Defendant's legitimate, non-discriminatory reason for terminating Plaintiff is pretextual.

C.   Retaliation

Plaintiff's retaliation claims under Title VII and the TCHRA both follow the same burden-shifting approach used in Title VII discrimination cases.  Strong v. Univ. Healthcare Sys., 482 F.3d 802, 805-06 (5th Cir. 2007); Niu v. Revcor Molded Prods. Co., 206 S.W.3d 723, 730 (Tex. App.--Fort Worth 2006, no pet.) (stating that a McDonnell Douglas burden-shifting analysis applies to retaliation claims under TCHRA).  Under this approach, Plaintiff must first establish a *prima facie* case composed of the following elements: (1) that he engaged in a protected activity; (2) that an adverse employment action occurred; and (3) that there was a causal connection between his protected activity and the adverse action. Pierce v. Tex. Dep't of Crim. Justice, 37 F.3d 1146, 1151 (5th Cir. 1994).  If he succeeds, the burden shifts to Defendant to proffer a legitimate, non-retaliatory reason for its actions, which then

---

[29] Id. at 170-71.

17

puts the burden on Plaintiff to show that Defendant's reasons are a pretext for retaliation.  To carry his ultimate burden, Plaintiff must show that the adverse action would not have occurred but for his protected activity.  Strong, 482 F.3d at 806.

Plaintiff asserts he was retaliated against when Defendant twice did not rehire him after he was laid off in February 2008.[30] Plaintiff's first allegation is that Defendant should have rehired him on a different crew the same day he was laid off.  When describing this claim, Plaintiff testified that he felt that Alvaro Garcia did not make a good faith effort to ask other foremen if they would hire Plaintiff.  Plaintiff explained that he was simply not part of the right clique:

> [H]ad I been [Alvaro Garcia's] drinking buddy, perhaps I wouldn't even be getting a pink slip.  I'd be taken directly over there [to another foreman] before receiving the pink slip.[31]

Therefore, Plaintiff does not contend that Defendant's failure to rehire him has any causal connection to a protected activity.  In addition, Defendant has proffered a legitimate, non-retaliatory

---

[30] In his First Amended Petition, Plaintiff alleges that he was retaliated against "[a]fter [he] asserted that rights protected by federal and state antidiscrimination statutes had been violated by defendant."  Document No. 1, ex. B ¶7.  Plaintiff does not identify any specifics about his alleged protected activity in his petition and offers no evidence of his alleged protected activity in his response to Defendant's Motion for Summary Judgment.

[31] Gonzalez Depo. at 160.

reason for not immediately rehiring Plaintiff: according to Aleman and Alvaro Garcia, no entry-level carpentry positions were available.[32]   Plaintiff has offered no evidence to raise a fact issue that this reason is pretextual.   Thus, this claim fails.

Plaintiff's second allegation is that Defendant retaliated against him by not rehiring him six months or so after he was laid off.   Plaintiff spoke to an unidentified receptionist at Defendant's office about applying for a job.   The receptionist's demeanor allegedly changed after she retrieved Plaintiff's file on her computer, and she told Plaintiff that he lacked the minimum fifteen years of experience required for that position.[33]   Plaintiff has proffered no evidence to raise a fact issue that Defendant's non-discriminatory reason for not rehiring him--that he lacked the requisite fifteen years of experience for the job he sought--was pretextual.   Thus, Defendant is entitled to summary judgment on the retaliation claims.

D.   <u>Hostile Work Environment</u>

Finally, Plaintiff also asserts that he was subjected to a hostile work environment in violation of Title VII and the TCHRA, both of which require the same analysis.   This claim requires proof that (1) he belongs to a protected group, (2) he was subjected to

---

[32]  Aleman Decl. ¶8; Garcia Decl. ¶7.

[33]  Gonzalez Depo. at 137-41.

unwelcome harassment, (3) such harassment was based on his protected status, and (4) the harassment complained of affected a term, condition, or privilege of employment.   42 U.S.C. § 2000e-2(a)(1).   For harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002) (internal quotation marks omitted). "The court must consider the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interfered with [the plaintiff's] work performance." Ellis v. Principi, 246 F. App'x 867, 871 (5th Cir. 2007).

Plaintiff claims that some of his fellow construction crew members subjected him to a hostile work environment by making comments about his American origin.   At his deposition, Plaintiff testified that his claim is based on the following:

(1) Crew member Jose Perez "sporadically" called Plaintiff a "pocho" or other terms meaning "fake Mexican" and referred to American Hispanics as "you people from here" or "you chicanos from here" in order to "emphasize the fact that he believed that we were lazy, spoiled."[34]

(2) Crew member Jesus Magana made remarks about how Plaintiff was "under a Mexican's balls," referring to how Plaintiff had "misused" his advantages of

---

[34] Gonzalez Depo. at 104-106, 116.

American citizenship and English fluency because he
still answered to a Mexican supervisor.[35]

(3)   An unnamed supervisor and a coworker nicknamed
"Payaso" once joked that "[i]t requires somebody of
our kind" to enter an excavation hole without first
obtaining a safety test and safety harness after
Plaintiff refused to enter the hole without those
safety measures.[36]

It is uncontested that these comments were merely sporadic.
Indeed, when Plaintiff was asked about the frequency of comments
made by Perez--the principal harasser--he stated:

Well, throughout the week it was -- it was just a sort of
from time to time type of deal.   It was just
sporadically, depending on what mood he was in and what
was on his mind sort of deal.   I couldn't give you a
range as to how many times.   Wasn't like he was, you
know, trying to keep, I guess -- wasn't like a pattern of
behavior.   It was just pretty much depending on what was
on his mind that day and how he was feeling that day.   In
fact, at times he seemed friendly.[37]

Moreover, Plaintiff proffers no evidence that these comments
affected his work performance.   Viewed in a light most favorable to
Plaintiff, the summary judgment evidence fails to raise a fact
issue that the comments were so severe or pervasive as to alter the
conditions of employment and create an abusive working environment.
*See, e.g.*, <u>Baker v. FedEx Ground Package Sys. Inc.</u>, 278 F. App'x
322, 328-29 (5th Cir. 2008) (holding that the defendant's sporadic

---

[35] <u>Id.</u> at 155-57.

[36] <u>Id.</u> at 97-98, 143-46.

[37] <u>Id.</u> at 106.

comments that "she did not want to work with people like" the plaintiff and that "whites rule" were "not sufficiently severe and did not unreasonably interfere with [the plaintiff's] work performance.").

### IV.   Order

For the foregoing reasons, it is

ORDERED that Defendant Jacobs Field Services Inc.'s Motion for Summary Judgment (Document No. 21) is GRANTED, and Plaintiff Fabrizio Gonzalez's claims are DISMISSED WITH PREJUDICE.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this 18th day of May, 2010.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE